UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>ALEJANDRO PALACIOS RENGIFO | 09-CR-109<br><br>**ECF** |

MEMORANDUM OF LAW IN SUPORT OF
ALEJANDRO PALACIOS RENGIFO'S PRETRIAL MOTIONS

 

Beth M. Farber
Law Offices of Beth Farber
80 Pine Street
New York, New York 10005
212-785-4275
farber@bethfarberlaw.com

*Attorney for Alejandro Palacios Rengifo*

**INTRODUCTION**

Alejandro Palacios Rengifo respectfully submits this memorandum in support of his motion to dismiss the indictment because his prosecution for the offense of kidnapping occurring wholly outside the United States in the United States District Court for the Southern District of New York violates the Due Process Clause of the Fifth Amendment.

Mr. Rengifo also requests further discovery on whether agents of the United States were involved with Columbian authorities when he was subject to questioning without being advised of his right to remain silent and without the presence of a lawyer. In this regard, the defense requests all communications between United States agents and the law enforcement authorities of Panama and Columbia as it bears on the prosecution of Mr. Rengifo.

Before addressing the law relating to these requests, defense counsel wants to make the Court aware of the difficulties in preparing these motions. Counsel has only represented this defendant for four weeks. The defendant does not speak English and is illiterate in his own language, Spanish. Prior to being extradited to the United States, he spent perhaps a year in prison in Columbia. Prior to that he has spent almost ten years living in the jungle with the FARC since the age of fourteen. Accordingly, communication with the defendant regarding the legal and factual issues in this case requires more than the usual amount of time. Moreover, for reasons which are not clear, he is being housed in Brooklyn Detention Center in

the Special Housing Unit (SHU) which makes visiting the defendant even more time consuming and cumbersome.

All of the discovery is in Spanish and the government has only provided the translation of one important document. All of the events took place in Panama and Columbia and all the witnesses are in Columbia. The only witness not located overseas is probably the victim.

Counsel has prepared these motions based on the available information which is admittedly only a small part of the total information which should eventually be developed in this case. For this reason, counsel requests permission to file additional motions as the case progresses as additional discovery and/or investigation reveal important facts.

## **FACTUAL BACKGROUND**

Mr. Rengifo has been charged with a violation of the Hostage Taking Act, 18 U.S.C. § 1203, (hereinafter the "Act") which provides in relevant part:

(a) Except as provided in subsection (b), of this section, whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or attempts or conspires to do so, shall be punished by imprisonment for any term of years or for life . . .

(b)(1) It is not an offense under this section if the conduct required for the offense occurred outside the United States unless ----

     (A) the offender or person seized or detained is a national of the United States. . . . [1]

The facts, as set forth in the Declaration of Counsel accompanying this motion are as follows. The victim is a United States national who was living in Panama City, Panama from which he was kidnapped on April 6, 2008. He was then held hostage in Panama or Columbia until February 23, 2009 when he was released after his family paid the kidnappers' ransom demands.

The government alleges that Mr. Rengifo and others acted as guards of the victim while he was held by the 57th Front of the Fuerzas Armadas Revolucionaries de Colombia (the "FARC"). Based on the government's version of the events as set forth in its "Memorandum of Law in Response to the Defendant's Motion to Suppress Identification Evidence", the victim was kidnapped by Orobio Lobon at the behest of Luis Fernando Mora Pestana a/k/a "Silver" the deputy commander of the 57th Front. Lobon is not a member of FARC.

After being abducted by a group of men including members of the Panamanian police, the victim was taken by boat to a remote area on the coast of Panama where he was transferred to the custody of "three men armed with AK-47

---

[1] The Act was passed in 1984, some years after the United States became a signatory to the International Convention Against the Taking of Hostages and the language of the Act is derived from the Convention. United States v. Pacheco, 902 F. Supp. 469 (S.D.N.Y. 1995). The defendant is not challenging the constitutionality of the statute itself.

4

assault rifles who took him inland to a jungle camp." Memorandum at 3. These three men, one of whom the government alleges was Mr. Rengifo, as well as three others unnamed, guarded the victim at a series of jungle camps over the next ten months.

If called to testify, Mr. Rengifo would present the following information. Mr. Rengifo is approximately 26 years old. He grew up in a small rural community of Rio Sucio, Choco, Columbia. The FARC forcibly recruited him at the age of 14. He never attended school and cannot read or write. During the years with FARC he lived in the jungle and had a number of different jobs. His commander was Silver, the man the government has identified as the mastermind of the scheme to kidnap the victim in this case. The FARC is a military/terrorist organization and its recruits are forced to obey the orders of their commanders. FARC keeps its recruits through threats and the use of force to prevent them from attempting to escape. The recruits live in isolated rural jungle camps where there is little realistic possibility of escape.

Mr. Rengifo was not informed of the kidnapping of the victim and had no role in its planning. He did not make contact with the family in the United States and had no control over the choice of victim. He was ordered by his commander to guard the victim and had no choice, upon pain of death, but to obey.

Mr. Rengifo has never been to the United States and had no role in targeting the victim. He had no knowledge that the victim was American until informed by the victim himself after the defendant was ordered by his commander to guard him.

5

No part of this crime took place within the territorial jurisdiction of the United States.

## ARGUMENT

### I

**THE EXTRATERRITORIAL APPLICATION OF THE HOSTAGE TAKING STATUTE TO MR. RENGIFO VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT**

Because there is an insufficient nexus between Mr. Rengifo and the United States, the extraterritorial application of the hostage taking statute violates the Due Process Clause of the Fifth Amendment of the United States Constitution.

**A.    The Due Process Clause of the Fifth Amendment Limits the Extraterritorial Application of Federal Statutes to Defendants Who Have a Sufficient Nexus to the United States**

In *United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003), the Second Circuit addressed for the first time the extent to which the Due Process Clause limits the United States' assertion of jurisdiction over criminal conduct committed entirely outside of United States territory. Recognizing the Ninth Circuit view that "[i]n order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair," *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990) (citation omitted), the Second Circuit expressly adopted this standard as the rule in this circuit. 327 F.3d at 111.

Applying this standard to the defendants in *Yousef*, the Second Circuit concluded that assertion of jurisdiction was consistent with due process where "[t]he defendants conspired to attack a dozen United States-flag aircraft in an effort to inflict injury on this country and its people and influence American foreign policy." *Id.* at 112. With respect to the defendants' bombing of a Philippine Airlines flight from Manila to Japan, which killed one Japanese passenger and injured others, the court likewise concluded that assertion of jurisdiction did not offend due process because the attack was a "test-run" in furtherance of the conspiracy to attack United States-flag aircraft. *Id.* As the court stated, "[g]iven the substantial intended effect of their attack on the United States and its citizens, it cannot be argued seriously that the defendants' conduct was so unrelated to American interests as to render their prosecution in the United States arbitrary or fundamentally unfair." *Id.*

Similarly, in *United States v. Al Kassar*, 582 F.Supp.2d 488 (S.D.N.Y. 2008), the district court concluded that there was a sufficient nexus between the defendants and the United States where the indictment charged defendants with "voluntarily conspiring to sell millions of dollars worth of weapons to the FARC, *with the expectation that those weapons would be used to kill United States nationals*, as well as taking active steps towards consummating that sale (including receipt of laundered monies from New York)." 582 F.Supp.2d at 494 (emphasis added). Because the defendants were charged with "conspiring to sell weapons to the FARC *in an effort to inflict injury on the United States and its people*," *id.* (emphasis added),

7

their prosecution in the United States comported with due process and was not arbitrary or fundamentally unfair. *Id.*

As the Ninth Circuit has observed, "[t]he nexus requirement serves the same purpose as the 'minimum contacts' test in personal jurisdiction. It ensures that a United States court will assert jurisdiction only over a defendant who 'should reasonably anticipate being haled into court' in this country." *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Thus, for instance, application of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70501 *et seq.* (formerly 46 U.S.C. app. § 1903), to a foreign national apprehended on a foreign-flag vessel on the high seas comports with due process where there is evidence that the defendant intended to smuggle drugs into United States territory. *See, e.g., Davis*, 905 F.2d at 249; *Klimavicius-Viloria*, 144 F.3d at 1257-59; *United States v. Khan*, 35 F.3d 426, 429-30 (9th Cir. 1994).[2]

The Ninth Circuit has declined to require a nexus to the United States, as a matter of due process, where the customary international law principle of

---

[2] On the other hand, where a foreign national is apprehended on a *stateless* vessel on the high seas, the MDLEA can be applied consistent with due process even in the absence of a nexus requirement. *United States v. Caicedo*, 47 F.3d 370, 372-73 (9th Cir. 1995); *United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993); *United States v. Alvarez-Mena*, 765 F.2d 1259, 1266 (5th Cir. 1985); *United States v. Howard-Arias*, 679 F.2d 363, 371-72 (4th Cir. 1982); *United States v. Marino-Garcia*, 679 F.2d 1373, 1384 (11th Cir. 1982). This is because a defendant on a stateless vessel attempts to avoid the law of *all* nations, and thereby can be charged with notice that *any* nation may exert jurisdiction over him. *See Caicedo*, 47 F.3d at 372-73.

universal jurisdiction applies. *United States v. Shi*, 525 F.3d 709, 722-23 (9th Cir. 2008). As the Second Circuit explained in *Yousef*, "[t]he universality principle permits a State to prosecute an offender of any nationality for an offense committed outside of that State and without contacts to that State, but only for the few, near-unique offenses uniformly recognized by the 'civilized nations' as an offense against the 'Law of Nations.'" *Yousef*, 327 F.3d at 103.[3] This limited category of offenses traditionally included only piracy, but has been extended to include war crimes and "crimes against humanity." *Id.* at 104. In *Shi,* the acts with which the defendant was charged constituted acts of piracy, leading the Ninth Circuit to conclude that due process does not require a nexus between the defendant and the United States because the "the universal condemnation of the offender's conduct puts him on notice that his acts will be prosecuted by any state where he is found." 525 F.3d at 723.[4] .

---

[3] The Second Circuit's discussion of the universality principle in *Yousef* occurred in the context of its analysis of subject matter jurisdiction, not the due process argument analyzed elsewhere in *Yousef* and specifically at issue here. Unlike the Ninth Circuit, the Second Circuit has not addressed whether principles of international law may guide the inquiry into whether the due process nexus requirement is satisfied in a particular case.

[4] Although the Ninth Circuit has noted that "[i]nternational law principles may be useful as a rough guide of whether a sufficient nexus exists between the defendant and the United States so that application of the statute in question would not violate due process," *Davis*, 905 F.2d at 249 n.2, it expressly cautioned that "danger exists that emphasis on international law principles will cause us to lose sight of the ultimate question: would application of the statute to the defendant be arbitrary or fundamentally unfair?" *Id.*

**There is No Nexus Between Mr. Rengifo and the United States Sufficient To Satisfy the Due Process Limit on Application of the Hostage Taking Act to  Mr. Rengifo's Extraterritorial Conduct**

Mr. Rengifo is a foreign national, a citizen of Columbia.  He was a low level conscript in the FARC.  All of the events underlying this offense took place outside the United States in Panama or Columbia.  The Indictment charges a conspiracy to take a hostage for the purpose of obtaining ransom.  There are no political motivations contained in the Indictment.  This was a purely criminal, financially motivated offense.

There is no indication that Mr. Rengifo played any role in deciding to perpetrate a kidnapping or in choosing the kidnapping victim.  Nor is there any evidence that he knew that the victim had any relationship to the United States until the victim himself told him after he had started to guard him.  There was no purposeful conduct on the part of Mr. Rengifo to target an American citizen.  In regard to Mr. Rengifo, the status of the victim was completely fortuitous.

The facts of this case are fundamentally unlike those in cases where courts have found a nexus between defendants and the United States sufficient to satisfy due process. In *Yousef*, the Second Circuit held that the nexus requirement was satisfied because the defendants' conduct was purposefully aimed at the United States – they conspired to attack United States-flag aircraft and actually bombed a foreign-flag aircraft as a test run in furtherance of the conspiracy. 327 F.3d at 112.  Similarly, in *Al Kassar*, the defendants allegedly conspired to sell weapons to the FARC with the express expectation that such weapons would be used to kill United

10

States nationals. 582 F.Supp.2d at 494. In *Davis* and other cases in which the MDLEA was applied to foreign nationals apprehended on foreign-flag vessels on the high seas, there was evidence that the defendants intended to transport drugs into United States territory. *See, e.g., Davis*, 905 F.2d at 249; *Klimavicius-Viloria*, 144 F.3d at 1257-59; *United States v. Khan*, 35 F.3d 426, 429-30 (9th Cir. 1994).

In contrast, there is no evidence that Mr. Rengifo targeted Americans, or even had any knowledge that the victim was an American until he was guarding him. He did not participate in the decision making regarding the occurrence of the kidnapping, the target of the kidnapping, where the victim would be kept, or demanding the ransom.  He was ordered to guard a man in the jungle and he did so. He could have been charged with this crime in Panama or perhaps Columbia. However, there is no justification for extraditing him from Columbia to stand charges in New York for a crime which carries a potential sentence of life in prison. The Due Process Clause of the Fifth Amendment requires that the defendant himself have some nexus to the United States sufficient to ensure that application of a federal criminal statute to him is not arbitrary or fundamentally unfair. There is no such nexus in this case, which presents a stark example of arbitrary and fundamentally unfair application of United States law to a foreign national who has done nothing to expect to be haled into court here.

The nexus requirement cannot be dispensed with in this case by reference to international law. As noted, the principle of universal jurisdiction is limited to a very specific set of offenses which the Second Circuit specifically declined to expand

11

beyond piracy, war crimes, and crimes against humanity. *See Yousef*, 327 F.3d at 107.

Under the circumstances presented here, subjecting Mr. Rengifo to the extraterritorial jurisdiction of the United States, and placing him in jeopardy of life imprisonment in the United States, deprives him of fundamental fairness and due process in violation of the Fifth Amendment. Accordingly, the indictment must be dismissed.

## II

**THE GOVERNMENT SHOULD PROVIDE DISCOVERY REGARDING THE ROLE OF THE UNITED STATES AND ITS AGENTS IN OBTAINING THE STATEMENT GIVEN TO THE COLUMBIAN AUTHORITIES BY MR. RENGIFO**

The government has provided to the defense a copy of a statement which was given by Mr. Rengifo to Columbian authorities in which he discusses various topics regarding his life with the FARC. This statement was apparently taken when Mr. Rengifo was in custody and was given in the absence of *Miranda* warnings and an attorney. Presumably the government will seek to enter this statement into evidence at trial.

The Second Circuit has addressed the applicability of the rule of *Miranda* to the admission of statements made by defendant in a foreign country to foreign authorities in *United States v. Terrorist Bombings of U.S. Embassies in East Africa*, 552 F. 3d 177 (2d. Cir. 2008). In that case, the Second Circuit noted that the two

primary goals of the rule of *Miranda* are to insure the trustworthiness of any statements elicited and to deter misconduct by law enforcement authorities. *Id.* at 202. Because the threat of suppression holds little deterrence for foreign authorities, the Second Circuit declined to extend the rule of *Miranda* to statements obtained overseas exclusively by foreign authorities. *Id.*

However, the Second Circuit recognized that if United States agents participated in the interrogation or if the foreign authorities were acting as agents for their American counterparts, then the interrogation would be a "joint venture" and subject to the strictures of *Miranda*. Id. at 203. The Court stated: " . . . we proceed on the assumption that the *Miranda* "warning/waiver" framework generally governs the admissibility in our domestic courts of custodial statements obtained by U.S. officials from individuals during their detention under the authority of foreign governments." *Id*.

Accordingly, prior to the defense making an informed challenge to the admissibility of the alleged statements of the defendant, the defense requests all communications between the foreign authorities and United States agents regarding the interrogation, arrest, and prosecution of Mr. Rengifo. It appears from the discovery, that during the period of the victim's captivity, the FBI and other United States law enforcement were working with the Columbian and/or Panamanian government to locate the victim. Thus, it is possible that the United States agents played a part in the interrogation and apprehension of Mr. Rengifo by governmental authorities overseas. No challenge to the statements can be made until the

13

government discloses the relationship between its agents and the foreign law enforcement authorities.

In addition, the circumstances surrounding the role of the United States government in defendant's interrogation and the eventual decision by the Columbian authorities to release Mr. Rengifo and then arrest him for extradition to the United States may contain mitigating evidence which would influence the defense in this case.

## **CONCLUSION**

For the foregoing reasons, Mr. Rengifo respectfully submits that the application of the Hostage Taking Act, 18 U.S.C. § 1203, to hold him for trial in the Southern District of New York violates the Due Process Clause of the Fifth Amendment, and respectfully urges this Court to grant his motion to dismiss the indictment. Mr. Rengifo also requests that the Court order the government to turn over all communications between the United States law enforcement and foreign governments which bear on the interrogation and prosecution of Mr. Rengifo.

Dated: January 11, 2011
      New York, NY

                                 Respectfully submitted,

                                 s/Beth M. Farber_____

                                 BETH M. FARBER
                                 80 Pine Street, Floor 33
                                 New York, NY 10005
                                 Tel: 212-785-4275
                                 Fax: 212-785-4075

                            *Counsel to Defendant Alejandro Palacios Rengifo*